**Edward Omar SPEARMAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 93–70496.
Crim. No. 91–50013.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 24, 1994.

Paul D. Borman, Federal Defender Office, Detroit, MI, for plaintiff.

Mark C. Jones, Asst. U.S. Atty., Flint, MI, for defendant.

## ORDER GRANTING PETITIONER'S MOTION 2255, ALLOWING PETITIONER TO WITHDRAW HIS GUILTY PLEAS AND VACATING THE SENTENCE THEREON

GADOLA, District Judge.

### I. Procedural History

On October 15, 1991, the day petitioner's trial was scheduled to begin, petitioner plead guilty to one count of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and (2) and one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Petitioner was sentenced by this court on January 16, 1992 to a term of 240 months.

On September 25, 1992, petitioner filed a *pro se* motion for "an out-of-time appeal." On September 30, 1992, this court granted petitioner's motion for leave to proceed *in forma pauperis.* On January 7, 1993, Magistrate Komives appointed the Federal Public Defender Office to represent petitioner in his post-conviction proceedings.

On November 30, 1993, petitioner, represented by the Federal Public Defender Office, filed a motion under 28 U.S.C. § 2255 to withdraw his guilty plea as to both counts I and II and vacate his sentence. The government filed a response March 7, 1994. Petitioner filed a reply March 24, 1994. An evidentiary hearing was held, commencing on May 5, 1994, continuing on July 5, 1994, and concluding on August 8, 1994.

### II. Factual Background of Petitioner's Criminal Case

On April 8, 1991, Magistrate Marc L. Goldman authorized a warrant to search three residences and four vehicles. One of the addresses targeted by the warrant, 504 West Hamilton, Flint, Michigan, was the residence of petitioner. The affidavit attached to the warrant indicated that federal agents expected to find unlawfully registered firearms and other evidence relating to the illegal purchase and resale of firearms.

The government suspected that petitioner was enlisting the assistance of others, including co-defendants Antonio Jenkins and Toye Campbell, to acquire new firearms from licensed gun dealers under false pretenses. Petitioner's suspected mode of operation was to ask these and other people to purchase hand guns in their names, register them at the Genesee County Sheriff's Department, and the Flint Police Department, and then provide the firearms to petitioner who reimbursed them for the purchase price of the guns and paid them a fee for their services. Petitioner then allegedly sold the guns to unlicensed individuals, including individuals who were known narcotics traffickers in the Flint, Michigan area. The April 8, 1991 warrant and supporting affidavit, however, did not discuss narcotics or any suspected narcotics trafficking by petitioner himself.

On April 8, 1991, federal agents conducted the search of 504 West Hamilton and found several firearms, various gun magazines and books, ammunition, and a jar containing co-

caine residue in an amount of 6 milligrams. Also found, in petitioner's bedroom, were ten safety inspection certificates in the name of Toye Campbell. Petitioner was taken into custody by federal agents on April 8, 1991. Petitioner was presented to Magistrate Marc Goldman on Tuesday, April 9, 1991, and was ordered held without bond until Thursday, April 11, 1991.

On April 12, 1991, petitioner was named with co-defendants Antonio Jenkins and Toye Campbell in an eight-count indictment. The indictment charged petitioner with four of the eight counts: Count I charged petitioner with dealing in firearms without a license and charged Jenkins with aiding and abetting petitioner, in violation of 18 U.S.C. § 922(a)(1) and (2). Count II charged petitioner alone with conspiring "with other persons, both known and unknown to the Grand Jury," to distribute over 500 grams of crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1); no other person was named in the conspiracy and no specific acts, either of agreeing to or participating in a conspiracy, were alleged. Count III charged petitioner and Jenkins with conspiracy to provide false statements in connection with the acquisition of firearms in violation of 18 U.S.C. §§ 922(a)(6) and 371. Finally, Count VIII charged petitioner with possession of the 6 milligrams of cocaine found on April 8, 1991 at 504 West Hamilton, in violation of 18 U.S.C. § 844(a).

Petitioner initially plead not guilty to all of the above. Petitioner's trial was scheduled to begin October 15, 1991. On the first day of trial, prior to a jury being selected, petitioner, pursuant to a plea agreement, plead guilty to counts I and II of the indictment. Counts III and VIII, as they pertained to petitioner, were dismissed by the government. Petitioner now moves to set aside those guilty pleas and vacate the sentence that followed. For the following reasons, the court will grant petitioner's motion.

## III. Petitioner's Claims of Ineffective Assistance of Counsel

Petitioner claims that he "was denied his constitutional right to effective assistance of counsel at the pretrial stage, at his plea to the firearms and narcotics counts, at his sentencing proceeding, and in attempting to exercise his right to appeal." Petitioner brings this motion under 28 U.S.C. § 2255. Section 2255 provides that a prisoner in custody under sentence of a federal court may bring a motion, at any time, to vacate, set aside or correct his sentence, if the sentence was imposed in violation of federal law, ... "or is otherwise subject to collateral attack." Petitioner claims that his sentence was imposed in violation of federal law because, throughout the criminal proceedings against him, he was deprived of his Sixth Amendment right to effective assistance of counsel.

■ The failure to raise a claim at trial or on direct appeal generally will result in a waiver of a claim. In order to obtain collateral relief, a prisoner faces a higher hurdle than exists on direct appeal. *United States v. Frady,* 456 U.S. 152, 164 and 167, 102 S.Ct. 1584, 1592–93 and 1594, 71 L.Ed.2d 816 (1982). Petitioner "must shoulder the burden of showing, not merely that the errors at his [sentencing] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [sentencing] with error of constitutional dimensions." *Id.* at 171, 102 S.Ct. at 1596. Petitioner may not collaterally attack his sentence without establishing cause [1] for his failure to previously raise these issues and actual prejudice. *Id.* at 168–69, 102 S.Ct. at 1594–95; *Ratliff v. United States,* 999 F.2d 1023, 1025 (6th Cir.1993).

■ A district court is not required to have an evidentiary hearing on Section 2255 motions. Rule 8(a) of the Rules Governing Section 2255 Proceedings provides as follows:

Rule 8. Evidentiary Hearing

(a) Determination by court. If the motion has not been dismissed at a previous

---

1. The Supreme Court has recognized that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural fault." *Murray v. Carrier,* 477 U.S. 478, 497, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986).

stage in the proceeding, the judge, after the answer is filed and any transcripts or records of prior court actions in the matter are in his possession, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.

Further, a district court is not required to set forth its findings of fact and conclusions of law if the record conclusively shows that the petitioner is not entitled to relief. *United States v. Edwards*, 711 F.2d 633, 634 (5th Cir.1983); *United States v. Counts*, 691 F.2d 348, 349 (7th Cir.1982).

In this matter, this court deemed an evidentiary hearing to be required on the issues and contentions raised by defendant's petition. Accordingly, such a hearing was held as aforesaid.

■ The Supreme Court has held that criminal defendants have a Sixth Amendment right to counsel. *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984), *citing Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). That right exists to protect a defendant's right to a fair trial. *Id.* A fair trial is guaranteed by the Constitution through the Due Process clauses and defined largely through the Sixth Amendment's several provisions, including the Counsel Clause.

The right to counsel plays a crucial role in the adversarial systems embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.

*Id.* 466 U.S. at 685, 104 S.Ct. at 2063, *quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 275–76, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942). "That a person who happens to

be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." *Id.* Counsel can deprive a defendant of his right to counsel by failing to render "adequate legal assistance." *Id.* 466 U.S. at 686, 104 S.Ct. at 2064.

■ A defendant complaining of the ineffectiveness of counsel's assistance first must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. at 2064–65. "This requires showing that counsel was not performing as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Once this showing is made, the defendant must show that counsel's deficient performance prejudiced the defense by depriving the defendant of a fair trial, the result of which was reliable. *Id.*

In *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986), the Supreme Court held that in reviewing a claim for ineffective assistance of counsel, a reviewing court should "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts and omissions' overcome the presumption that a counsel rendered effective professional assistance." With this end in view, the court reviews the entire record of counsel's performance.

**A. Counsel's Effectiveness at the Pretrial, Pre–Plea Stage**

■ In reviewing the record of counsel's representation in petitioner's case, the court is struck by the lack of legal diligence that counsel employed on petitioner's behalf. The written submissions of counsel consist largely of generalized, non-pertinent rhetoric which only superficially sets forth any legal argument on behalf of petitioner.[2] Counsel's argument before Magistrate Goldman on petitioner's motion to sever demonstrates that counsel's representation did not amount to effective counsel ensuring an adversarial proceeding. A reading of the pleadings and review of counsel's participation at the hearing on the motion to sever, lead to the con-

**2.** It is noteworthy that the most detailed and specific motion filed in petitioner's case is counsel's motion for excess fees.

clusion that counsel made virtually no attempt to present any authority or basis for the motion. It seems, rather, that this motion was presented in only a *pro forma*, offhand manner, without any expectation of urging the merits thereof.

Counsel filed a total of four pre-trial motions on behalf of petitioner: a motion to sever filed August 2, 1991; a motion for speedy trial filed August 26, 1991; a motion to suppress evidence filed October 11, 1991; and a motion for immediate bond reconsideration filed October 11, 1991.

### 1. The Motion to Sever, Filed August 2, 1991

The first motion to sever sought to "sever defendant's two charges." [3] In the written portion of this motion to sever, counsel states the basis of the motion as being

> [t]hat the charge of Dealing in Firearms without a license makes the Defendant look guilty if at the same time he is charged with the Conspiracy to Distribute Cocaine because the jury may believe the Defendant had possession of the firearm because he had possession of the Cocaine.

Motion to Sever at 1. This paragraph makes no sense in light of the facts of this case. When the government conducted the search of 504 West Hamilton it found six milligrams of cocaine in a small relish jar. Assuming the government could prove this cocaine belonged to petitioner, it is unclear how possession of such a small amount of cocaine could

logically link petitioner to possessing firearms.

In fact, the government's whole theory of the case approached the cocaine-firearms issue from the opposite angle. The government had substantial evidence as to the firearms charges. In fact, on Tuesday, September 11, 1990 at the Genesee County Courthouse in Flint, Michigan, petitioner had testified, *inter alia*, that he was in the business of dealing in firearms and that he was conducting this business without a license to deal in firearms. Petitioner's Appendix at 147–56.

As to the drug conspiracy, the government's claim was that petitioner had "been identified as selling firearms to individuals who were known narcotics traffickers in the Flint, Michigan area." Petitioner's Appendix at 178. The government's theory as to the cocaine was essentially that petitioner assisted narcotics traffickers by selling them firearms. [4]

Counsel's motion for severance of counts I and II purports to attach a "brief in support." The brief, which is one and a half pages in length, reads in whole part as follows:

### FACTS

Federal agents executed a search warrant by searching the home of the Defendant, EDWARD OMAR SPEARMAN's grandmother located at 504 W. Hamilton, Flint, Michigan. The Affidavit for the Search Warrant alleges Mr. Spearman possessed 23 semi-automatic rifles, be-

---

3. Petitioner was charged with four counts, not two. It is unclear why counsel did not address the other two counts charged.

4. Nowhere in the record is there any indication that the government ever had specific evidence that petitioner himself had either engaged in the distribution of cocaine or that petitioner had entered into a specific agreement with others as to the distribution of cocaine. The government alleged later, in its letter to the probation department, that petitioner, "along with some of the other defendants listed on [a separate indictment] began selling drugs in Flint on street corners." See Petitioner's Appendix at 119. The only evidentiary support linking petitioner to cocaine, however, appears to be the six milligrams of cocaine found at 504 West Hamilton and a statement of petitioner's girlfriend and co-defen-

dant, Toye Campbell. Campbell allegedly told police that petitioner had given her small amounts of cocaine in exchange for helping him purchase weapons. She also stated that on one occasion she had seen a large package of a white powder substance at the 504 West Hamilton address; she stated that she believed it probably belonged to Spearman. *Id.* at 172. None of these factual allegations, however, were the basis of the cocaine conspiracy charge. As the government acknowledges elsewhere in the record of the case, the basis of the cocaine conviction was that "[d]uring his plea, the defendant indicated that his involvement in the conspiracy was providing the guns to other members of the cocaine conspiracy. He acknowledged that over ½ kilogram of crack was sold by members of the conspiracy." *Id.* at 119 n. 2.

tween 17 and 19 of them being "assault rifles," in a gun safe at his grandmother's residence. In the search of his grandmother's home, several weapons and firearm paraphernalia, ammunition, clips, holders, receipts and a small quantity of cocaine were found at this home.

The Defendant was indicted on an 8 count indictment, 6 counts are related to firearms and 2 counts are dealing with cocaine.

The trial in the above captioned case is scheduled to begin on Tuesday, August 6, 1991, at 9:00 a.m.

### LAW

The United States Constitution and the Bill of Rights give an accused the right to a fair trial. *U.S.C.A. Constitution 5 Section 63*, states as follows:

> "This clause is a shield against unfair or deceptive treatment of an accused by the government". *U.S. v. Romano*, C.A.Mass.1978, 583 F.2d 1.

Because the Defendant is charged with the crimes of Dealing in Firearms Without a License and Aiding and Abetting, Conspiracy to Distribute Cocaine and Possession of Cocaine, at the same time, the jury will be inflamed and deny the Defendant the right to a fair trial under the rights of the Constitution.

It goes without saying that this document offered the court no coherent argument for severing count I from II. This one page motion erroneously refers to the Fed. R.Crim.P. as "Federal Court Rules."

This brief does not state upon what part of the Constitution or the Bill of Rights the defense was relying. There is no Section 63 of the Constitution. The nine page 1978 First Circuit opinion from which counsel quotes did not deal with the issue of severance, but rather self-incrimination. Further, the brief did not set forth the actual quote, which was relevant insofar as it dealt with due process, and not the right to a fair trial. The actual quote was:

> The *due process* clause of the fifth amendment is a shield against unfair or deceptive

treatment of an accused by the Government.

It is a clear example of counsel's ineffectiveness that this motion and brief did not cite any decisions relevant to the issue of severance of counts, *e.g. United States v. Wirsing*, 719 F.2d 859 (6th Cir.1983).

At the October 10, 1991 hearing on this motion, counsel was equally ineffective. At the hearing, the U.S. Attorney argued that the counts should be joined for trial because petitioner was dealing drugs and that such was evidenced by the cocaine found in petitioner's bedroom at the time of the search. What the prosecutor failed to point out, and what petitioner's counsel never brought to the attention of the magistrate judge, who deemed his decision on this important issue to be a "close case," was that the amount of cocaine found was merely six milligrams, less than one gram; that it came from residue found in an empty jar; and that the charges were based upon powder cocaine and not cocaine base. This evidence alone certainly was not sufficient to support tying the gun charge to the drug distribution charge.

The magistrate judge based his decision to not sever the counts on the following:

> In view of the proffer put forward by Mr. Jones [the U.S. Attorney] and the absence of anything to indicate that the proffer is false.

Tr. at 12. Counsel's failure to provide the factual reality of the situation, that is, that only a miniscule amount of another type of cocaine was recovered by the government, surely paved the way for the magistrate's decision to not sever the counts. The joinder of the counts created a substantial pressure to plead, based on the narcotics conduct, combined with the unsubstantiated murder and obstruction of justice matters, which matters will be addressed, *infra.*

Defense counsel's oral argument was, *in toto,* as follows:

> Your Honor, this is a relatively simple motion and the rationale for it is relatively simple also. There are basically two cases against Mr. Spearman. I realize there's several counts. But basically there are

gun charges and there are drug charges. They are easily separable.

The evidence is not totally separate but I mean everybody looks at it as so many weeks for the gun charges, so many weeks for the drug charges. And there—and I realize that from a negative side of severance there is going to be two openings and two closings and two juries to pick but by and large they're separate trials is what I'm really saying.

On the other side of the coin I think that it's prejudicial to have the two trials running together. I think when you add guns and drugs together it becomes much more inflammatory to the jury. And I realize that there's a curative type of instruction but I just don't think that that's going to cure the problem. And I guess what I'm saying is I don't think he can get a good trial on both of them together when it's no big deal to have several and that's the basis of my motion.

The transcript continues then for eight pages with dialogue between the prosecution and the magistrate. When asked if he has any response to the government's argument, counsel states

There may be some tangential myths but it's not interrelated and it's easily separable. And it's going to be real prejudicial to us.

As the magistrate later points out, the central issue of the motion to sever is "whether or not there is overlapping proof." Transcript of Motion Hearing at 11. Even after being given this statement of the law, counsel offered to the court no argument as to whether the evidence of the charged offenses would overlap. One can only assume from counsel's utter failure to argue the evidence that counsel had not apprised himself of the facts of the case prior to submitting or arguing the motion.

### 2. The Motion to Suppress Evidence, Filed October 11, 1991

Petitioner was arraigned on April 18, 1991. On October 11, 1991, almost six months later, and four days prior to trial, petitioner's counsel filed an out-of-time motion to suppress. Four days later, on October 15, 1991, petitioner's counsel, without having received a government response (none was required within four days) and without asking the court to postpone proceedings and/or to rule on the motion, encouraged petitioner to plead guilty to firearms and drug charges carrying a twenty-year sentence.

The one and a half page motion to suppress states that the affidavit for the search warrant for 504 West Hamilton presented no probable cause to search for drug evidence because the warrant was only to search for guns. The motion, however, does not attach the search warrant affidavit, or explain fully why the drugs could not be seized, because even though the warrant specifically related to guns, it also stated "contraband." The motion specifies erroneously that crack cocaine was seized. The motion does not hint that the seizure could have been deficient under the Fourth Amendment because an empty jar with some indication of cocaine powder remnants is not indicative of contraband and thus was not subject to seizure. The motion then concluded by stating that the warrant was defective and requesting that the entire seizure, apparently guns as well, be suppressed.

The one and a half page brief in support of the motion sets forth an innocuous quote from *Illinois v. Gates*, 462 U.S. 213 (no year cite) (1983) which sets forth the U.S. and L.Ed. cites but then gives a page cite from neither. The page cite turns out to be from the Supreme Court Reporter, but the volume and the Reporter are not cited. At any rate, the cited verbiage speaks to evaluating all the circumstances, but never discussed the circumstances set forth in the warrant affidavit as they apply to the law. The brief then closes with this discombobulated statement:

Proceeding by warrant by being carefully circumscribed so as to prevent unauthorized invasion of the sanctity of a person's home and the privacies of life. *Burger v. New York*, 338 U.S. 699. This is an opportunity for the court to rule within the spirit of *Burger* to repudiate this assault on the Constitution that occurred to the Defendant, EDWARD OMAR SPEARMAN.

The "no year" cite to *Burger* is incorrect; there is no such case at 338 U.S. 699.

This incoherent conclusion in the brief does not join the issue, clarify or even set forth the argument, or in any way advance any law in support of petitioner's case. There is no coherent relevant application of any case law to the instant situation that would inform the court on why this motion should be granted. Finally, counsel never sought a ruling on this motion prior to the trial/plea. This out-of-time motion and brief were a glaring example of the effectiveness of counsel's "assistance." Had the motion been filed timely and researched and written properly, and had a request for argument been made, this motion might have been granted.[5]

### 3. Failure to File a Motion to Suppress Writing Seized from Petitioner's Jail Cell on June 19, 1991, Pursuant to a Search Warrant for Photographs

The seizure of written materials from petitioner's Shiawassee County jail cell in June 19, 1991 may have, arguably, been in violation of petitioner's Fourth Amendment rights, since the search warrant provided for a search only for photographs. The application and affidavit for the jail cell search warrant stated that "there is now concealed a certain person or property, namely: a. photographs of females." There was no "b" or any other person or property named. The closing paragraph of the affidavit stated: "15. By acquiring the photographs, I can identify the co-conspirators."

While this court expresses no opinion as to whether this search was in violation of petitioner's Fourth Amendment rights, the seizure of his personal writing during the execution of a search warrant may have constituted such a violation, and the failure of counsel to address this issue by the filing of a motion to suppress this evidence further demonstrates the ineffectiveness of counsel. The existence of the personal writings in which petitioner arguably indicated an animus and a threat to a government agent were utilized

to assist in the inducement of petitioner to plead guilty, the government having then agreed to refrain from prosecuting petitioner for obstruction of justice based on these writings, in partial exchange for his guilty pleas.

The government also used these writings to enhance petitioner's guidelines sentence range for obstruction of justice.

It should also be noted that in addition to failing to file a pre-trial motion to suppress these writings, petitioner's attorney also failed to object to the use of these writings by the probation department in drafting the pre-sentence investigation report and to their use by the court in determining petitioner's sentence. Such failure is further evidence of counsel's ineffective assistance.

### 4. The Motion for Speedy Trial, Filed August 26, 1991

In this motion, petitioner's counsel failed to seek relief for an alleged violation of the Speedy Trial Act, but rather merely requested that a trial date be set. A trial date was indeed set for October 15, 1991 and on this trial date petitioner offered his pleas of guilty to counts I and II.

As discussed *supra*, to prove that he received ineffective assistance of counsel, a defendant must show not only that his counsel's performance fell below an objective standard of reasonableness, but also that his counsel's deficient performance prejudiced him. *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993), *citing Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65. The preceding discussion of counsel's pretrial motion practice is representative of counsel's performance and demonstrates that his performance did, in the court's view, fall below an objective standard of reasonableness. Further, the court finds that counsel's ineffective assistance did manifestly prejudice petitioner in his defense of the charges to which he ultimately offered pleas of guilty.

---

**5.** The court, however, expresses no opinion on the issue of whether the motion to suppress

would in fact have been granted.

## B. Counsel's Effectiveness at the Plea Stage

■ To show prejudice in the context of a guilty plea, a defendant must establish by reasonable probability that but for counsel's error, he would not have plead guilty and would have insisted on going to trial. *Id., citing Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). Petitioner claims that on the day his trial was scheduled to begin, his counsel informed him that he couldn't do anything to help him in his trial and that if petitioner didn't plead guilty he would be sentenced to forty to sixty years. Petitioner's Appendix at 1. Even assuming this counsel's sentence estimation was incorrect, as a general rule, a miscalculation or erroneous sentence estimation by defense counsel is not, by itself, a constitutionally deficient performance rising to the level of ineffective assistance of counsel. *Id.* (citations omitted). Indeed, assuming the government could have proven the conspiracy charged in count II of the indictment, that count alone carried a potential life sentence.

Petitioner's claim, however, appears to be that counsel indicated to him, on the day of trial, that counsel was not prepared to go to trial because counsel believed that petitioner had no chance of succeeding. Counsel thereby effectively declined to represent petitioner at trial. The decision on the part of an attorney not to participate cannot be considered "sound trial strategy" or "professionally competent assistance." *Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir.1984).

The plea agreement, offered and accepted pursuant to Fed.R.Crim.P. 11, provided that the sentence would not exceed twenty years, but if the applicable guideline range was less than twenty years the government "will be seeking an upward departure to 20 years." (Plea agreement at 2). There is no evidence that petitioner's counsel explained to petitioner the legal basis for the twenty-year sentence, other than informing him that if he went to trial he would receive a forty to sixty year sentence.

There was no Sentencing Guideline worksheet attached to the plea agreement explaining to petitioner and the court the basis for the twenty-year sentence agreement, nor was one provided to petitioner or the court at the time of the plea. Thus, petitioner's plea seems to have been without knowledge as to this sentence bargain because petitioner was never given an explanation as to the twenty-year guideline sentence. While petitioner stated, at the plea stage, that "yes," he had "gone over with [his] attorney the way these sentencing guidelines work," this appears in fact to be doubtful.

Counsel's motion for excess fees confirms that he had never met with petitioner prior to the plea agreement without agents present, and further that this last meeting with petitioner, (with agents present) was thirteen days before the plea. Indeed, petitioner had sought to exercise his right to jury trial until the morning of the trial.

Counsel's motion for excess fees states, for October 15, 1992, the day of the plea, "travel to and from Detroit to attend plea taking ceremony." (Motion at 3). Counsel attended the "ceremony," but did not take part in any "rehearsals" with his client, necessary to provide effective assistance. Indeed, plea counsel drove to Detroit that day to try the case without having met with petitioner to prepare for trial. Upon arriving in Detroit, counsel recommended that petitioner plead guilty to both counts with the indication that he had no defense at trial and the prospect of a more severe sentence, i.e. forty to sixty years.

Further, although the Rule 11 plea agreement, signed by petitioner at the courthouse on the day of his plea, October 15, 1991, stated that it was "the complete agreement" with "no other understandings,"; that was not correct. At the plea proceeding, the government orally amended the Rule 11 agreement, providing the following additional "benefits" to petitioner:

1. *Murder Charges*—that the government would not indict petitioner for his alleged involvement in the drug-related murders of "Joaquin Parker and Penny Farrett, on January 27, 1991 in Flint"; and

2. *Obstruction of Justice*—that the government would not "seek an indictment for threatening a federal agent or his family for a letter which was seized from Mr. Spearman

on June 19, 1991 from his Shiawassee County Jail cell."

3. *Government "Take Backs"*—that this agreement, further stated by the U.S. Attorney "does not limit the government from providing information as to these two factual events to this court for sentencing in this matter, and thirdly, this agreement does not limit the ability of the state authorities to bring forth murder charges as to those two victims ... if they deem it appropriate. I'm not saying that they intend to, but I'm saying that this doesn't limit them from so doing." (Plea Tr. at 24–25).

Pretrial discovery provided to petitioner did not indicate sufficient evidence of petitioner's specific involvement in the deaths of Parker or Farrett, or the drug-related tie, necessary to justify a federal murder prosecution under the limited federal jurisdiction of 21 U.S.C. § 848(e)(1)(A):

> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

Petitioner's attorney failed to seek further discovery of this allegation, and failed to challenge its illusory nature prior to the plea, in the presentence report, or at the sentencing.

The second alleged "bargain"—to not bring obstruction of justice charges for threatening a federal agent through a personal writing found in petitioner's jail cell, never sent—was for a rather dubious benefit. The government, as discussed *supra*, acting under a search warrant for photographs, seized petitioner's personal writings, and then asserted at the plea proceeding that the writings would support an indictment for obstruction of justice alleging a threat against an agent or his family. This threat of a charge that was purportedly "bargained away" by the government to secure petition-

er's guilty pleas, more than likely was the "bargaining away" of a charge which the government could not substantiate. An unsent writing of an individual's personal thoughts, never communicated, would not seem to this court to amount to an obstruction of justice. Further, the seizure of this letter may have been a Fourth Amendment violation since the warrant authorized only the seizure of photographs and not writings.

Counsel's failure to raise these issues at the time of the plea bargain constitutes, in this court's opinion, a further demonstration of counsel's ineffective representation.

## C. Counsel's Ineffectiveness at the Sentencing

Petitioner's counsel failed to establish at sentencing any specific computation as to any amount of cocaine base relevant to defendant's sentence; he merely accepted the prosecutor's figure in the indictment without making any inquiry as to the basis for the claim that petitioner conspired with others to distribute in excess of 500 grams of crack cocaine. Thus, while the indictment mentions 500 grams of cocaine base, that amount was not a relevant element of the crime for plea purposes. That amount was, however, critically relevant for sentencing, and it was incumbent on trial counsel, both upon receipt of the presentence report which noted the Local Court Rule for making objections, and at the sentencing hearing, to challenge that drug amount, and to require that the drug amount utilized for petitioner's sentence be established by reliable evidence. Here, the amount was not established by specifics at the sentencing; indeed, it was not even established with *any* specificity in the presentence report.

Petitioner's counsel further failed to provide him with a copy of the Assistant U.S. Attorney's sentencing letter, did not go over the letter with him prior to the sentencing, and did not file objections or in general respond, *inter alia*, to the prosecutor's description of petitioner as "one of the worst criminals in Flint." The letter also contains other information prejudicial to petitioner—murders, drive-by shootings, drug dealing,

threats—unrebutted by petitioner's counsel, which had not been made known to petitioner at the time of the sentencing. This letter was sent to petitioner's counsel three days after the plea and three months prior to the sentencing.

Another significant example of ineffective assistance of counsel that directly prejudiced petitioner was his counsel's failure to object to and correct damaging information in the presentence report. The most damaging paragraph of the presentence report relating to the narcotics conspiracy conviction stated:

> 19. Regarding the drug conspiracy conviction, SPEARMAN has been identified as selling firearms to individuals who were known narcotics traffickers in the Flint, Michigan area. The government contends that during 1990, SPEARMAN assisted other individuals in selling cocaine, and in selling firearms from 202 Edmund Street, Flint, Michigan. During the course of the conspiracy, over 500 grams of crack cocaine was distributed.

Petitioner's counsel failed to object to the vagueness of this paragraph—to its failure to establish with any particularity that petitioner had any direct involvement with narcotics distribution, much less with over 500 grams of cocaine base.

This paragraph contained no names, dates of incidents, specific types of guns involved, specific types of drugs involved, or any other fact necessary to establish an adequate factual basis for the conviction and the twenty-year sentence. That this paragraph was never challenged by petitioner's counsel further confirms the lack of effective assistance of counsel. Indeed, the government's scenario about petitioner distributing drugs, and the specific selection of the 500 grams of crack figure, was never challenged by petitioner's counsel in any way at any stage of the proceedings against petitioner.

Petitioner's counsel did not act to minimize or explain away the following damaging hearsay in paragraph 31 on page 81 of the presentence report, relating to the murder that occurred at the home of petitioner's mother:

*Other Criminal Conduct*

> 31. On January 21, 1991, two people were murdered and a third person shot and left for dead at the home of defendant Spearman's mother. The surviving person placed SPEARMAN at the murder scene, but did not see who actually did the shooting. However, the murder weapon was tied to the defendant through his thumb print being located on the gun box. The government has agreed to file no charges against the defendant for this drug related murder as part of the Rule 11 Agreement.

That petitioner was, at most, merely present at the scene of a murder does not make him culpable for that offense. That the government describes it as a drug-related murder, a necessary prerequisite to a federal prosecution, does not make it a drug-related murder. That petitioner's thumb print was located on the gun box that contained the murder weapon is of no great evidentiary significance, since the government had alleged that petitioner had been selling many firearms to many individuals.

Paragraph 32, on page 8 of the presentence report, speaks of a shooting where petitioner was allegedly present:

> 32. Additionally, defendant SPEARMAN was present on April 4, 1991, when two people were shot.

This short sentence should have been challenged as of no significance in the sentencing of petitioner. Nothing states with certainty that petitioner had any involvement in the alleged shooting.

Defense counsel also failed to object, as the guidelines and Local Court Rule 232.1 permit, and as these circumstances demanded, as to the claims of threatening a government agent as set forth in paragraph 33, page 8, the first part of which stated:

> 33. Further, the government has indicated that, as part of the Rule 11 Agreement, no charges will be sought for Threatening a Federal Agent. The defendant is purported to have telephoned the ATF special agent's office and left a message containing a threat.

The Rule 11 agreement related the alleged threat from a "letter seized from Mr. Spearman's jail cell." The presentence report's

second sentence relates to another incident where petitioner's phone message merely stated, "I just called to see how you were doing ... You sure you're doing fine?" It is difficult to perceive how this phone message could be construed as a threat.

The second part of paragraph 33 stated:

Likewise, SPEARMAN purportedly threatened a Flint police officer who was involved in the Genesee County Circuit court case. Defendant SPEARMAN also purportedly threatened and intimidated prosecution witnesses of the instant federal case.

No evidence of any threat to a Flint police officer was disclosed. Further, the generalized statement that he "purportedly threatened and intimidated prosecution witnesses of the instant federal case" is of no specificity and, therefore, no worth as evidence. Petitioner's attorney failed his client in not objecting to these prejudicial generalities in the presentence report.

The importance of objecting and the underlying prejudice to petitioner, is that the relevant conduct relating to the drug conspiracy upon which the sentence was to be based, as to the narcotics count and particularly the amount involved, depended upon supporting facts, which were never presented at the plea, in the presentence report, or at the sentencing. The same importance attaches to counsel's role in objecting to the enhancement for obstruction of justice.

Thus, all of the aforementioned generalities, set forth in the presentence report against petitioner, which might well have been excluded from the report had appropriate objections been made by plea-counsel, were present for the consideration of the court in the sentencing of petitioner.

Further, because the prosecution, at sentencing, made a Sentencing Guideline § 5K1.1 motion for downward departure, the court was free to depart down to any sentence deemed proper, depending on possible mitigating evidence and factors presented by petitioner's counsel. There was none of either presented by defense counsel at the sentencing.

## D. Factual Basis of Petitioner's Plea; Necessity of Advising Petitioner of Elements of the Offense

### 1. Petitioner's Guilty Plea to Count II— Conspiracy to Distribute Cocaine

■ In conjunction with his claim that he did not receive effective assistance of counsel at the plea stage, petitioner argues that there existed no factual basis for petitioner's guilty plea to the conspiracy charged in count II of the indictment, and that he was not properly advised of the essential elements of that offense.

As the court has noted, *supra,* a review of the entire record of petitioner's case, reveals that the sole basis of the government's claim that petitioner had been involved in a drug conspiracy was the allegation that petitioner, without a license to deal in firearms, sold illegally registered firearms to known narcotics traffickers; these are the factual circumstances to which petitioner plead guilty. The transcript of the plea proceeding reads as follows:

THE COURT: All right. Now, insofar as Count Two of the indictment is concerned, what is it—what is it that you did that leads you to conclude that you're guilty of the charges in Count Two of the indictment?

SPEARMAN: Provided firearms for drug trafficking.

THE COURT: Well, that charges you with a conspiracy to distribute cocaine. What did you do in that connection?

SPEARMAN: Well, I knew that the guns that was—I received I was going to sell to cocaine traffickers.

THE COURT: I see. In other words, it was your intention to provide firearms to—to a cocaine distribution organization?

SPEARMAN: Yes.

THE COURT: And you had agreed with them to—to provide the firearms and to facilitate their distribution of cocaine?

SPEARMAN: Yes.

THE COURT: So you were the person that—during a period from—was it from 1987 to 1991?

SPEARMAN: '89.

THE COURT: From 1989 to 1991?

SPEARMAN: Yes.

THE COURT: That's when this went on?

SPEARMAN: Hm'hmm.

THE COURT: You knew that these people were engaged in the distribution of cocaine?

SPEARMAN: Yes.

THE COURT: And you were going to furnish firearms to them or did furnish firearms to them to assist them in their distribution of cocaine.

SPEARMAN: Yes.

THE COURT: And during that—the time that you were involved in this plan, was over 500 grams of cocaine base which is also known as crack distributed by these people to whom you were furnishing the firearms?

SPEARMAN: Yes.

THE COURT: All right.

Petitioner's Appendix at 108–09.

To convict a defendant under 21 U.S.C. § 846, "the government must [demonstrate] the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join *and* participated in the conspiracy." *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990). This requires that "the defendant had the deliberate, knowing and *specific intent* to join the conspiracy." *United States v. Gordon,* 712 F.2d 110, 114 (5th Cir.1983). "A conspiracy requires proof of a specific agreement to commit a specific crime, for the *same criminal purpose,* on the part of *all indicted conspirators.*" *United States v. Bell,* 954 F.2d 232, 236–39 (4th Cir.1992) (emphasis added). A conviction for a principal offense of conspiring to distribute cocaine requires a defendant to have had a *specific intent* to commit the substantive offense of distribution. *United States v. Pope,* 561 F.2d 663, 670 (6th Cir.1977) (emphasis added).

One may know of, and assist (even intentionally), a substantive crime without joining a conspiracy to commit the crime— witness the landlord who rents to an illegal gambling den (citation omitted), and the retailer who sells sugar to one he knows will use it to make bootleg whiskey (citation omitted).

\* \* \* \* \* \*

To be sure, the landlord … might be liable under civil forfeiture provisions, and, along with the retailer, might be liable for aiding and abetting the substantive offenses, but we do not subject them to additional liability .as conspirators simply because they aided the conspiracy and derived a benefit from doing so.

*United States v. Townsend,* 924 F.2d 1385, 1383 (7th Cir.1991).

To prove a conspiracy, it is necessary to show that the conspirators agreed to act in furtherance of a common goal or purpose. *Id.; United States v. Percival,* 756 F.2d 600, 607 (7th Cir.1985) (single conspiracy cannot be found when there is no overall goal or common purpose); *and see United States v. Ayotte,* 741 F.2d 865, 867 (6th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984) (an agreement between conspirators may be inferred from acts committed with a common purpose).

By definition, market transactions—whether in legal or illegal markets—benefit both parties, but we do not assume, *ab initio,* that they carry with them the excess baggage of conspiracy.... For example, in the absence of other evidence we would not *presume* that one who purchases drugs from a dealer who also runs an automobile "chop shop" intends to join the car theft ring, even if he knows about it. Neither activity necessarily, or even logically, advances the other. The analysis doesn't change when the other party confines his criminal activities to one market. For example, if a thief plans to rob two banks, with a different accomplice on each occasion, we do not presume, from this fact alone, that the three bank robbers have conspired together, even if each accomplice knows that his partner is also planning a robbery with someone else.

*Townsend,* 924 F.2d at 1392 (emphasis in original). In the context of drug distribution, there must be evidence of more than mere association with those who deal drugs. *United States v. Pedigo,* 12 F.3d 618, 624 (7th Cir.1993). The evidence must establish that

the defendant intended to join the particular criminal scheme of the charged conspiracy. *Id.*

In the instant case, petitioner's crime was selling firearms to persons known to be involved in drug trafficking. He admitted in detail how he operated his illegal firearms business. Obviously, his goal was to make money from the sale of firearms.

On this evidence alone, there is no logical inference that the firearms supplied by petitioner advanced the purpose of the distribution of cocaine, which was presumably, to make money from the sale of drugs. It is generally known that the use of firearms is incidental to narcotic trafficking. Drug dealers typically use firearms to protect themselves in their dealings with other drug dealers. Their activities being outside of the law, criminals cannot very well call upon the local authorities to protect them from other outlaws. There are, however, a whole litany of other products that are typically employed by drug dealers; products such as airplanes, plastic baggies, bullet proof vests, scales, et cetera. If a retailer sells a bullet proof vest or a package of plastic baggies, for example, to one who is known in the community to be a drug dealer, he could not, in the absence of other evidence, be found guilty of conspiring to distribute illegal drugs. The fact that both petitioner and the drug distributors benefitted from petitioner's sale of firearms does not, *ab initio*, lead to the conclusion that they were acting in concert to further a common scheme.

The mere sale of firearms to a drug dealer does not, in and of itself, cause the seller of the firearms to become a member of a drug distribution conspiracy. More is required. While the government may have been able to produce such evidence that petitioner was a conspirator, the required factual basis does not appear in the transcript of the plea hearing. Neither does it appear that the court adequately advised defendant of the essential elements of the offense. Had petitioner's counsel, the court,[6] or the prosecution thoroughly discussed with petitioner the nature of the crime of conspiracy, there is a reasonable probability that petitioner would not have plead guilty to count II of the indictment.

It is clearly required that the court, in receiving a guilty plea, must explain to the defendant the elements of the offense so as to ascertain that the defendant understands the charge against him. Failure to do so has been held to be a failure to comply with Fed.R.Crim.P. 11(c)(1), which expressly re-

---

**6.** Rule 11(c)(1) of the Fed.R.Crim.P. provides that when taking a guilty plea, the court must "inform [the defendant] of, and determine that he understands, ... the nature of the charge to which the plea is offered." In the instant case, the court's discussion of the nature of the conspiracy charge was limited to the following:

> THE COURT: In Count Two, you're charged with, ... conspiring—that is, agreeing with or combining with other persons to distribute cocaine and distributing over 500 grams of cocaine base during the course of this conspiracy or confederation or plan, and doing that in violation of the law. Do you understand that that's what you're charged with in Count Two?
> SPEARMAN: Yes.

The court's explanation of the term conspiracy was limited to substituting for the word conspiracy the words "agreeing with or combining with." Later in the proceeding, the court engages in a colloquy with petitioner wherein petitioner states that the factual basis for his plea is that he "received guns that [he] was going to sell to cocaine traffickers." Petitioner's Appendix at 108.

In *United States v. Van Buren*, 804 F.2d 888, 891–92 (6th Cir.1986), the Sixth Circuit found that the reading of the indictment and the defendant's response that he had no further questions did not establish a factual basis for the defendant's plea of guilty to a conspiracy charge. In that case, the defendant was charged with conspiring to distribute cocaine through use of the telephone. The court found that a charge of utilizing a communication facility to further a conspiracy or in the commission of a conspiracy is a complex charge that a lay person would not easily understand. "To fully understand the charge against him, defendant must have understood what it meant to be a member of a conspiracy and to act in furtherance of that conspiracy." *Id.* at 892. In the instant case, the charge of conspiracy against petitioner was at least as complicated as the charge faced by Van Buren. By all accounts, petitioner was not himself in the business of distributing cocaine. The issue of whether his sale of firearms to known narcotics traffickers was sufficient to hold him accountable as a member of a cocaine distribution conspiracy is also a complex legal question that should have been addressed more thoroughly by the court. For this reason as well, the court will permit petitioner to withdraw his plea of guilty to count II and vacate the sentence.

quires that the defendant be told the nature of the charge. When a defendant pleads guilty, that defendant is admitting all the elements of a formal criminal charge, and thus he must have knowledge of those elements. While it may be sufficient to only read the indictment in a simple case, in a more complex case further explanation may be required, and in any case, the court must be satisfied, after discussion with the defendant in open court, that the defendant fully understands all the essential elements of the offense. *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *United States v. Syal*, 963 F.2d 900 (6th Cir.1992); *United States v. Edgecomb*, 910 F.2d 1309 (6th Cir.1990); *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir.1986).

It is this court's finding that the conspiracy charge of count two, in light of the fact that defendant's alleged involvement was the sale of firearms to drug dealers, required additional explanation of the elements and inquiry of defendant prior to acceptance of his plea. The colloquy with the defendant was, in this court's estimation, insufficient in this case to meet the requirements of Rule 11 of the Fed.R.Crim.P.

## 2. Petitioner's Guilty Plea to Count I— Dealing Firearms Without a License

With respect to petitioner's plea of guilty to count I, dealing in firearms without a license, the court finds that there was a sufficient factual basis for that plea. Petitioner provided explicit details of how the operation was carried out and his description of his conduct falls under the conduct proscribed by 18 U.S.C. § 922, and meets the requirements of Rule 11(c)(1).

Petitioner nevertheless claims that his guilty plea was not made voluntarily and knowingly but rather was coerced by the constitutionally deficient representation of his counsel and by the government's illusory promises to not charge petitioner with obstruction of justice and murder in exchange for his guilty plea. For the following reasons, the court agrees that the conduct of both petitioner's counsel and the prosecution was sufficient for the court to infer that petitioner's guilty plea was coerced. As discussed *supra*, counsel's representation was constitutionally deficient.

During the plea proceeding, the parties orally amended the Rule 11 agreement to include certain promises on the part of the government as bases for the guilty plea. In exchange for petitioner's plea of guilty to both counts I and II, the government promised, *inter alia*, that it would not indict petitioner for his alleged involvement in the drug-related murders of "Joaquin Parker and Penny Farrett, on January 27, 1991 in Flint"; and, it would not "seek an indictment for threatening a federal agent or his family for a letter which was seized from Mr. Spearman on June 19, 1991 from his Shiawassee County Jail cell." Petitioner's Appendix at 99.

Petitioner claims now that these promises were illusory because the government's only discovered evidence linking petitioner to the alleged murders was one witness' statement that petitioner was present at the scene of the murders, though the witness did not know who was responsible for the killings. The federal murder statute, 21 U.S.C. § 848(e)(1)(A), *see discussion supra*, is complex. According to petitioner, his counsel sought no further discovery of the government's evidence of this charge and failed to challenge its illusory nature at either the plea or sentencing stages. Petitioner claims also that the promise to not bring obstruction of justice charges also was illusory. *See discussion supra.*

Obstruction of justice by threatening a federal officer is covered by 18 U.S.C. § 1503 which reads as follows:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any ... officer ... in the discharge of his duty ... shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The court agrees with petitioner that a note found among one's personal effects cannot constitute a threat unless it has been published to another person with the intent to influence or intimidate that other person.

Thus, the court agrees that the government's promises with respect to the murder and obstruction of justice charges were illusory and counsel's failure to object to their introduction at petitioner's plea and sentencing constitutes additional indicia of counsel's failure to effectively assist petitioner. Illusory representations made by the prosecution to induce a defendant to waive his right to trial and instead enter a guilty plea have been found to constitute coercion justifying the withdrawal a guilty plea. *See Dillon v. United States,* 307 F.2d 445 (9th Cir.1962) (where prosecutor, as part of the plea agreement, agreed to recommend a sentence, *if asked* by the court, knowing that the court had not asked for a sentencing recommendation for three years, the defendant was deceived by the government into entering a guilty plea.) For the foregoing reasons, the court shall allow petitioner to withdraw his guilty plea as to count I as well as count II.

### E. Counsel's Effectiveness at the Appeal Stage

■ Petitioner's sentencing hearing was held January 16, 1992. The judgment of sentence was entered by the court on January 22, 1992. Fed.R.App.P. 4(b) provides that a criminal defendant has ten days to file a notice of appeal from a judgment of conviction of the district court. Thus, petitioner's notice of appeal was due Monday, February 1, 1992. On January 28, 1992, counsel mailed to petitioner a letter which reads as follows:

Enclosed please find a copy of the Judgment in a Criminal Case that was entered on January 22, 1992.

Please review the Judgment and if there is something incorrect in it's [sic] content, please let me know immediately. I reviewed the Judgment and found everything was correct per the agreement with the United States Attorney and Judge Gadola.

If you are interested in appealing your case, you must be aware of an issue that the federal agents did that was either illegal or incorrect as to the procedures the law has to follow. In my opinion, after continuously reviewing your file throughout the time period of your case, I have not seen any evidence that the federal agents did anything incorrectly.

If you are aware of something that could be an issue, I need to know by January 30, 1992, which is 10 days after receiving the Judgment.

After the appeal is filed, it will take approximately two to three years for the appeals court to come back with a decision.

Please let me know your decision immediately. In 1992, January 28 fell on a Wednesday. Assuming counsel mailed the letter the same day it was dated, counsel therefore allowed only three business days to contact petitioner by mail and have petitioner get back to him.

Sometime between January 16 and January 28, 1992, petitioner was transferred from the county jail to a federal prison. Consequently, the January 28 letter was returned to counsel a week later with an indication that petitioner no longer was being held at the county jail. In a letter dated April 21, 1992, which appears to be written in response to a letter from petitioner, counsel writes

... I forwarded the Judgment of Sentence to you on January 28, 1992, and it was returned because you were no longer at the Macomb County Jail. In that letter were instructions for appeal, and since I did not receive a reply within 10 days, your transcripts were never ordered.

\*　　\*　　\*　　\*　　\*　　\*

I am sorry that the appeal letter did not reach you, but you should have contacted my office after your move.

If you wish to have a copy of your file, there are approximately 500 pages in it and since I gave these to you once, this time I will have to charge you ten cents per copy. The cost is approximately $50.00. When this money order is received, I will copy your file and forward it to you.[7]

---

7. Counsel had been appointed by the court to represent petitioner and therefore was entitled to reimbursement from the court for the cost of any copies and for his time in copying the materials.

After receiving this letter, petitioner wrote counsel on July 20, 1992 requesting counsel to file a motion for "an out of time appeal," and asking again for a new copy of his court records without charge to him. Counsel apparently did not reply to this letter.

On August 19, 1992, petitioner wrote counsel again, asking counsel to provide him with a copy of his sentencing transcript. On August 21, 1992, counsel responded to this letter as follows:

This is the last time that I am going to correspond with you and answer the same questions over and over. I was appointed your attorney on April 11, 1992. From that day forward, my office has sent you a copy of everything I received from the United States District Court until the day you were sentenced. After you were sentenced, I forwarded to you the Judgment of Sentence and a notice giving you information to appeal your case. I DID NOT KEEP ANYTHING FROM YOU. When that letter was sent, you had approximately 10 days to give me an answer on whether or not you wanted to appeal.[8] I am sorry you were moved to another location during that time and you did not receive that information, but it is not my fault. The envelope was returned to my office over a week later. The due date for the Notice of Appeal was expired. When that ten days expired, I was no longer your Attorney.

You continue to ask me for the sentencing transcript. I DO NOT HAVE IT. The only way I could have ordered that was after I received notice from you that you wanted to appeal in that ten day time. Because I am no longer your attorney, it would cost me approximately $30.00 to order it and because I will not get reimbursed for it, I have no reason to purchase it.

I did everything I was required to do when representing you. I met with you several times, we spoke on the telephone regarding your case, I sent you a copy of everything I received, attended your hearings and completed motions and requests by their deadlines.

Once again I will apologize, but since I am no longer your attorney, I am not required to furnish you another copy of your file, order any transcript, or motion for an appeal when your deadline was in February, 1992.

If you want your sentencing transcript, you will need to order that yourself by contacting the United States District Court Clerk's office in Flint, Michigan. They will inform you of who the Court Reporter was on the day you were sentenced, and you will have to order the transcript from that individual and pay them the cost of the that copy.

Thank you for your time and consideration.

The court finds these letters to be indicative, both in tone and content, of an attitude on the part of counsel that is directly contrary to the spirit of the Sixth Amendment. Counsel made no effort whatsoever to ensure that petitioner had the opportunity to appeal his sentence or conviction.

Counsel claims in an affidavit submitted in opposition to petitioner's motion 2255 that he and petitioner discussed appeal after petitioner's sentence and agreed that none would be taken. The record indicates that on January 16, 1992, counsel did request from the court an opportunity to meet with petitioner following the sentencing hearing. Petitioner claims, however, that at that meeting he and his counsel did not discuss an appeal and therefore could not have reached any decision with respect to whether an appeal would be filed. The court finds it obvious, from counsel's own letters, that counsel discussed the issue of appeal with petitioner for the first time in the January 28, 1992 letter that never reached petitioner.

The court therefore does not understand counsel's refusal to provide petitioner with new copies, particularly in light of petitioner's claim that during his transfer, the United States Deputy Marshal irretrievably lost all of his personal effects including his court records.

8. This is incorrect. In fact, petitioner had four days from the date of the letter to file a notice of appeal and counsel indicated in his first letter that if petitioner wished to appeal he needed to contact counsel by January 30, 1992, two days after date of the letter.

Counsel is an experienced criminal attorney who had every reason to expect that petitioner, within the two weeks following his sentencing, would be moved from the county jail to the federal penitentiary. Mailing a letter to petitioner at the county jail three business days before the notice of appeal is due to be filed is not objectively reasonable representation from a lay person, no less an experienced attorney. Having received no reply from petitioner, counsel could have filed the notice of appeal and later withdrawn same if no appeal was desired by petitioner.

The government argues that there are no appealable issues in petitioner's case. The Sixth Circuit, however, has explicitly held that

> a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success.

*United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993). In the instant case, petitioner did not have an opportunity to indicate whether he desired to appeal because his counsel did not discuss with him his right to appeal until the deadline was long passed.

Counsel tells plaintiff, "I met with you several times, we spoke on the telephone regarding your case, I sent you a copy of everything I received, attended your hearings and completed motions and requests by their deadlines." Counsel's statement to petitioner that he "did everything [he] was required to do when representing [petitioner]" reverberates with the tone of a person who "happens to be a lawyer" and one who thinks that merely being present at trial alongside the accused *is* enough to satisfy the constitutional command of the Sixth Amendment. *Strickland v. Washington,* 466 U.S. at 685, 104 S.Ct. at 2063. The Supreme Court, however, has held that legal representation that falls below an objectively reasonable standard is not sufficient to fulfill the right to counsel guaranteed by the Sixth Amendment.

### IV. Conclusion

After carefully reviewing the entire record of petitioner's case, this court finds that at all stages of petitioner's case, counsel's representation did not rise to an objectively reasonable standard of professionalism. The court further finds that but for counsel's ineffective assistance of counsel, there is a reasonable probability that petitioner would not have plead guilty to either count I or II and would have insisted on going to trial. Further, this court finds that petitioner was not adequately informed, at the time of his guilty plea to count II, of the elements of the conspiracy offense, and of the nature of that charge, as required by Fed.R.Crim.P. 11(c)(1).

### ORDER

Therefore, it is hereby ORDERED that petitioner's motion under 28 U.S.C. § 2255 seeking to withdraw his pleas of guilty to counts I and II of the indictment and to vacate the sentence thereon is **GRANTED**.

It is further **ORDERED** that the judgment and commitment order entered January 22, 1992 is hereby **VACATED**.

**SO ORDERED.**